*222 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante este foro los recurrentes, Agentes Especiales del Negociado de Investigaciones Especiales del Departamento de Justicia de Puerto Rico, y mediante el presente recurso nos solicitan que revoquemos una resolución de la Junta de Apelaciones del Sistema de Administración de Personal dictada el 15 de abril de 2004 y notificada el 23 de abril siguiente. Mediante dicha resolución, la JASAP declaró sin lugar una apelación instada por los recurrentes, donde solicitaban que se decretara la ilegalidad de ciertos ascensos en las categorías de Agente II y de Agente III del Negociado de Investigaciones Especiales, planteando que a los recurrentes no se les dio la oportunidad de competir y ascender conforme a derecho.
I
Hechos e Incidentes Procesales Pertinentes
El Negociado de Investigaciones Especiales (en adelante el NIE) es una unidad administrativa y operational adscrita al Departamento de Justicia de Puerto Rico. 
Los recurrentes se han desempeñado como Agentes Especiales en el NIE, a saber: Ismenia Acosta Toledo y Hugo de la Rosa, como Agentes Especiales II; y Carlos R. Pacheco Rivera, Marijulia Rivera Lampón y Aida Rosado, como Agentes Especiales I.
Para febrero de 1999, el NIE no mantenía registros de elegibles para ascensos a los puestos de Agente Especial II y de Agente Especial III. 
El 7 de febrero de 1999, en respuesta a una consulta de la entonces Directora del NIE, el Secretario Auxiliar de Recursos Humanos del Departamento de Justicia le informó a ésta los procedimientos a seguir para llevar a cabo ascensos sin oposición. En un memorando de esa fecha, dicho Secretario Auxiliar le expuso lo siguiente:

“Un ascenso sin oposición es un mecanismo de excepción donde no media la libre competencia de los candidatos para cubrir el puesto. Este mecanismo se utilizará independientemente de la existencia de un registro de elegibles cuando las exigencias especiales y excepcionales del servicio y las cualificaciones de los empleados así lo justifiquen.

Para determinar cualificaciones especiales de los empleados se considerarán, entre otros, los siguientes 
*223
criterios:

1. Resultados obtenidos del Sistema de Evaluación adoptado por el Departamento de Justicia, por aquellos empleados que alcancen o sobrepasen el nivel esperado en la ejecución de tareas y cumplimiento de los criterios de orden y disciplina. '

2. Estudios académicos, adicionales a los requisitos mínimos, directamente relacionados con las funciones del puesto que se propone ascender.

3. Adiestramientos o cursos aprobados, directamente relacionados con las funciones del puesto al que se le propone para ascender, que sean adicionales a los requisitos mínimos requeridos.

4. Experiencia, adicional a la requerida, adquirida mediante designaciones oficiales de interinatos, asignaciones administrativas o intercambio de personal, directamente relacionado con las funciones del puesto al que se propone ascender.

Las exigencias especiales y excepcionales del servicio surgen cuando el Departamento de Justicia tiene la necesidad de personal adiestrado y cualificado en situaciones tales como:

1. Asignación o atención de nuevas funciones.

2. Ampliación de los servicios que presta la agencia.

3. Necesidad de reclutar personal que logre mantener la continuidad en la prestación de los servicios sin necesidad de mayor orientación.

4. Inexistencia de un registro de elegibles o inadecuacidad del mismo.

5. Urgencia por cubrir el puesto vacante que hace impracticable el procedimiento ordinario.

Se considerará para ascenso sin oposición a todo empleado de carrera con status regular o probatorio.”

Mediante memorando del 24 de enero de 2000, la entonces Directora del NIE solicitó de sus Directores Auxiliares lo siguiente:

“Por este medio solicito de ustedes realicen una evaluación de todo su personal y me sometan cinco (5) candidatos para ser acreedores a ascenso y/o pasos por méritos, por división.

En el proceso de evaluación deberán considerar los siguientes criterios.

1. Resultados obtenidos del sistema de evaluación, donde aquellos empleados alcanzan o sobrepasan el nivel esperado en la ejecución de tareas y cumplimiento de los criterios de orden y disciplina.

2. Estudios académicos adicionales a los requisitos mínimos, directamente relacionados con las funciones del puesto que se propone ascender.

3. Adiestramiento o cursos aprobados, directamente relacionados con las funciones del puesto al que se le propone ascender, que sean adicionales a los requisitos mínimos requeridos.

4. Experiencia, adicional a la requerida, adquirida mediante designaciones oficiales de interinatos, 
*224
asignaciones administrativas o intercambio de personal directamente relacionada con las funciones del puesto al que se le propone ascender.

Agradeceré envíen esta información a la mayor brevedad.”

El 24 de enero de 2000, la Directora del NIE designó un “Comité Evaluador de Candidatos a Ascensos y/o Pasos por Mérito.” El 25 de febrero de 2000, la Directora sometió al Secretario Auxiliar de Recursos Humanos una lista con los nombres de los agentes especiales del NIE que habían sido evaluados con el propósito de ser ascendidos.
En marzo de 2000, el Secretario Auxiliar de Recursos Humanos certificó los empleados que serían ascendidos a los puestos de Agentes de Investigaciones Especiales II y III.
A partir del mes de abril de 2000, la representación legal de los recurrentes cursó al Departamento de Justicia varias comunicaciones en las que planteaba que se habían efectuado ciertos ascensos en el NIE, “de manera contraria a derecho”. En respuesta a dichas comunicaciones, el 20 de junio de 2000, el Departamento de Justicia comunicó al abogado de los recurrentes lo siguiente:

“Según el compromiso programático del Gobierno de Puerto Rico, se crearon unos puestos a nivel II y III para las clases de Agente de Investigaciones Especiales y Protección y Agente de protección a Testigos. Para cubrir estos puestos se realizaron transacciones mediante el concepto de Ascensos Sin Oposición, según establecido en la Ley Número 5 de 14 de octubre de 1975, Artículo 10, Sección 10.1.

La referida ley le permite al Secretario de Justicia el autorizar ascensos sin oposición a empleados cuando las exigencias excepcionales y especiales del servicio y las cualificaciones de los empleados así lo justifiquen. Por exigencias excepcionales y especiales se entenderá la necesidad de reclutar personal cuando medie, entre otras, una de las siguientes:

1. Asignación de nuevas funciones.

2. Ampliación de servicios que presta la agencia.

3. Necesidad de reclutar personar que logre mantener la continuidad en la prestación de los servicios sin mayor orientación.

4. Inadecuacidad de un registro de elegibles.

5. Urgencia por cubrir un puesto vacante que hace impracticable el proceso ordinario de reclutamiento.

Para determinar las cualificaciones especiales de los empleados se considerarán, entre otros, los siguientes criterios:

1. Resultados del sistema de evaluación de aquellos empleados que alcancen o sobre pasen el nivel esperado en la ejecución de tareas y cumplimiento de los criterios de orden y disciplina.

2. Estudios académicos adicionales a los requisitos mínimos, directamente relacionados con las funciones del puesto que se propone ascender.

3. Adiestramientos o cursos aprobados, directamente relacionados con las funciones del puesto al que se le propone ascender, que sean adicionales a los requisitos mínimos.

*225
4. Experiencia, adicional a la requerida, adquirida mediante designaciones oficiales de interinatos, asignaciones administrativas o intercambio de personal, directamente con las funciones del puesto al que se propone ascender.

Los empleados fueron evaluados por un Comité del Negociado de Investigaciones Especiales y que conoce cada área o funcionamiento de dicha dependencia. El proceso evaluativo de los empleados consistió de un análisis de la preparación académica, posiciones en el Negociado de Investigaciones Especiales (actuales y anteriores), además de las aportaciones realizadas, destrezas, asistencia, puntualidad, complejidad de funciones, relaciones personales, cursos, seminario, adiestramientos, desempeño en el trabajo y actitudes, entre otros.

Se evaluaron las capacidades y destrezas de los empleados. Los candidatos fueron considerados a base de los puestos disponibles y donde estaban las vacantes. El Comité hizo sus recomendaciones conforme a las evaluaciones, estableciendo un proceso justo para todos.”

Insatisfechos con las explicaciones que el Departamento de Justicia les ofreció, para justificar los ascensos sin oposición cuestionados, el 20 de julio de 2000, los recurrentes presentaron escrito de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante JASAP), solicitando, en esencia, que se decretara la ilegalidad de los mismos y que se resolviera que a ellos no se les había dado oportunidad de competir y ascender conforme a derecho. El Departamento de Justicia contestó dicha apelación, sustancialmente negando los planteamientos de los recurrentes.
Luego del trámite procesal correspondiente ante la JASAP, durante los días 16 de junio y 21 de agosto de 2003 se celebró la vista administrativa de rigor ante un Oficial Examinador. En dicha vista ambas partes presentaron prueba documental y testifical. Sometido el caso por las partes, el 18 de febrero de 2004, el Oficial Examinador rindió su informe, recomendando a JASAP que se pronunciara no ha lugar a la apelación, confirmando así la decisión o actuación del Departamento de Justicia.
El 15 de abril de 2004, con archivo en autos y notificación a las partes del 23 de abril siguiente, la JASAP dictó la resolución de la cual se recurre, en la cual resolvió declarar no ha lugar a la apelación presentada por los recurrentes.
El 12 de mayo de 2004, los recurrentes presentaron ante JASAP una moción de reconsideración de la resolución dictada el 15 de abril anterior. El 19 de mayo siguiente, la JASAP dictó una orden poniendo bajo estudio la reconsideración presentada. Con fecha de 30 de junio de 2004, el Departamento de Justicia presentó ante la JASAP su oposición a la reconsideración instada.
No habiendo sido resuelta oportunamente por la JASAP la reconsideración presentada, el 7 de septiembre de 2004, los recurrentes instaron el presente recurso de revisión de decisión administrativa.
II
Cuestión Planteada
A la luz de los hechos e incidentes procesales en el ámbito administrativo antes reseñados, nos corresponde resolver si erró la JASAP al denegar la apelación de los recurrentes, sosteniendo con dicha decisión que el procedimiento diseñado e implantado por el Departamento de Justicia para llevar a cabo los ascensos sin oposición cuestionados se hizo conforme a la ley y a la reglamentación aplicable.
III
Conclusiones de Derecho y Análisis de la Cuestión Planteada
*226 A
Disposiciones Aplicables de la Ley de Personal del Servicio Público
Nuestro sistema de personal del servicio público está gobernado por la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la “Ley de Personal del Servicio Público de Puerto Rico”, 3 L.P.R.A. see. 1301 et seq. Este estatuto rige en amplitud todo lo relacionado a la selección, adiestramiento, ascensos y retención en el empleo de los empleados públicos, todo ello en consideración al mérito y a la capacidad, sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen, o condición social ni por ideas políticas ni religiosas. 
En materia de oportunidades y de mecanismos para ascenso de los empleados públicos, la sección 4.4(l)(c) de la Ley Núm. 5, supra, 3 L.P.R.A. sec. 1334(l)(c), dispone que:

“Se podrán autorizar ascensos sin oposición cuando las exigencias especiales y excepcionales del servicio, y las cualificaciones especiales de los empleados así lo justifiquen, previa la aprobación del examen que la Oficina determine.”

La siguiente sección 8 del mismo estatuto, 3 L.P.R.A. see. 1411, define “Examen” en los siguientes términos:

“Significará una prueba escrita, oral, física, de ejecución, evaluaciones de experiencia y preparación; u otras.”

En esa misma sección, 3 L.P.R.A. see. 1411(20), se define “Ascenso” de la siguiente manera:

“Cuando ocurre entre agencias con diferentes planes de clasificación, significará el cambio de un empleado de un puesto en una clase a un puesto en otra clase con funciones de nivel superior. Cuando ocurre entre agencias con un plan de clasificación uniforme, significará el cambio de un empleado de un puesto en una clase a un puesto en otra clase para la cuál se haya provisto un tipo mínimo de retribución más alto. ”

El Departamento de Justicia es una de las agencias incluidas dentro del Sistema de Personal que se creó en virtud de la Ley Núm. 5, supra. El NIE del Departamento de Justicia es un Administrador Individual, conforme se define en la Ley Núm. 5, supra, 3 L.P.R.A. see. 1301 a 1431. 
El concepto de Administrador Individual está recogido en las secciones 5.3 a 5.7 de la Ley Núm. 5, supra, 3 L.P.R.A. see. 1343 a see. 1347. En síntesis, los Administradores Individuales deben adoptar reglamentos con relación a las áreas esenciales al principio de mérito, en armonía con la Ley Núm. 5, supra. Véase sección 5.7 (1) de la Ley Núm. 5, supra, 3 L.P.R.A. see. 1347.
El Departamento de Justicia, incluido el NIE, como Administrador Individual, promulgó el Reglamento Núm. 4177 de 20 de agosto de 1986, para establecer normas aplicables al servicio de carrera.
La sección 10.1(b) de dicho Reglamento establece el procedimiento para los llamados ascensos sin oposición. Sobre el particular se dispone lo siguiente:
“(1) El Secretario podrá autorizar ascensos sin oposición a empleados cuando las exigencias excepcionales y especiales del servicio y las cualificaciones especiales de los empleados así lo justifiquen.

(2) Por exigencias excepcionales y especiales se entenderá la necesidad de reclutar personal cuando 
*227
medie, entre otras, una de las siguientes situaciones:

(a) Asignación o atención de nuevas funciones o programas.

(b) Ampliación de los servicios que preste la agencia.

(c) Necesidad de reclutar personal que logre mantener la continuidad en la prestación de los servicios sin necesidad de mayor orientación.

(d) Inadecuacidad de un registro de elegibles.

(e) Urgencia por cubrir un puesto vacante que hace impracticable el procedimiento ordinario de reclutamiento.

(3) Para determinar las cualificaciones especiales de los empleados se considerarán, entre otros, los siguientes criterios:

(a) Resultados obtenidos del sistema de evaluación adoptado, por aquellos empleados que alcancen o sobrepasen el nivel esperado en la ejecución de tareas y cumplimiento de los criterios de orden y disciplina.

(b) Estudios académicos adicionales a los requisitos mínimos, directamente relacionados con las funciones del puesto al que se le propone ascender.

(c) Adiestramientos o cursos aprobados, directamente relacionados con las funciones del puesto al que se le propone ascender, que sean adicionales a los requisitos mínimos requeridos.

(d) Experiencia, adicional a la requerida, adquirida mediante designaciones oficiales de interinatos, asignaciones administrativas o intercambio de personal, directamente relacionada con las funciones del puesto al que se propone ascender.”

La anterior disposición reglamentaria tiene apoyo en lo dispuesto de manera general en el Reglamento de Personal: Areas Esenciales al Principio de Mérito de 30 de noviembre de 1976, promulgado bajo la Ley Núm. 5, supra. El Artículo 8.2(3) de este cuerpo reglamentario general dispone:

“Ascensos sin oposición

a) La Administración Central o cada Administrador Individual podrá autorizar ascensos a empleados mediante exámenes individuales cuando las exigencias excepcionales y especiales del servicio y las cualificaciones especiales de los empleados así lo justifiquen.

b) Por exigencias excepcionales y especiales deberá entenderse que no haya registro de elegibles adecuado, que no pueda establecerse uno en tiempo razonable y que la necesidad de cubrir el puesto sea inaplazable, o que haya razonable certeza de que sólo hay un candidato disponible que reúne cualificaciones especiales para el puesto.

c) Por cualificaciones especiales de los empleados deberá entenderse aquellas relacionadas directamente con las funciones del puesto, que los capacitarán para lograr el ascenso mediante el procedimiento ordinario.”

Considerando estas normas, tanto estatutarias como reglamentarias, debemos atender los méritos del *228 presente recurso.
B
Revisión Judicial de Decisiones de las Agencias Administrativas
Reiteradamente, el Tribunal Supremo de Puerto Rico ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. Otero v. Toyota, 163 D.P.R. _ (2005), 2005 J.T.S. 13; Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Pacheco Torres v. Estancias de Yauco, 160 D.P.R. _ (2003), 2003 J.T.S. 148; González Santiago v. Fondo del Seguro del Estado, 118 D.P.R. 11 (1986).
Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. Rebollo Vda. de Liceaga v. Yiyi Motors, supra. Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que suija del expediente administrativo considerado en su totalidad. Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P .R. 387, 397 (1999); Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Facultad v. Consejo de Educación Superior, 133 D.P.R. 521, 532 (1993).
Como ha definido en diversas ocasiones nuestro más Alto Foro, evidencia sustancial es “aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Otero v. Toyota, supra; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131.
Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial. Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra. Debe demostrar- que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.
Las determinaciones de hechos de organismos y agencias “tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas”. Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); Facultad v. Consejo de Educación Superior, supra, pág. 532.
El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra, pág. 134.
Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, Rebollo Vda. de Liceaga v. Yiyi Motors, supra.; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85 (1997); y (3) cuando ha mediado una actuación irrazonable o ilegal. La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos. Otero v. Toyota, supra. Véase, además, Fernández Quiñones, Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Colombia, 2da. Ed., 2001, pág. 543.
*229 C
Análisis y Conclusiones
Como se presume, la regularidad y corrección de las determinaciones de hechos de las agencias administrativas, en el presente caso, ha correspondido a los recurrentes impugnar dicha presunción. Para ello, han debido producir evidencia suficiente para derrotar la misma. Véase Otero v. Toyota, supra; Henríquez v. Consejo de Educación Superior, supra; Facultad v. Consejo de Educación Superior, supra.
De otro lado, los recurrentes también han debido convencernos de que la evidencia en la cual se apoyó la JASAP para sostener las actuaciones del Departamento de Justicia en los ascensos cuestionados, no es sustancial; o que existe otra evidencia en el récord que reduzca o menoscabe la evidencia presentada por el Departamento de Justicia para validar sus actuaciones, hasta el punto que no sea posible concluir que el dictamen de la JASAP no fue razonable de acuerdo con la totalidad de la prueba que tuvo ante sí. Véase Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.
Ninguna de las dos exigencias antes expuestas, dentro del presente proceso revisorio, han sido satisfechas por los recurrentes.
Un estudio cuidadoso y ponderado de la transcripción de la vista administrativa celebrada ante la JASAP para atender la apelación allí instada por los recurrentes, demuestra que los cuestionamientos de éstos con relación a la corrección de los procedimientos llevados a cabo para conceder los ascensos sin oposición impugnados, son evidentemente especulativos, escuálidos y faltos de sustancia.
Los propios recurrentes, al prestar testimonios ante la JASAP, admitieron que se les requirió ser considerados dentro del proceso de ascensos sin oposición. Todos cumplimentaron el cuestionario que se confeccionó a esos efectos. Ninguno aportó evidencia de que en su caso en particular hubiera mediado algún tipo de discrimen o desviación del proceso para deliberadamente excluirlo del mismo. El hecho de no haber sido incluidos en la lista de empleados a ser definitivamente ascendidos, no permite, sin más, inferir que medió discrimen o trato desigual. Tanto el discrimen como el trato desigual, así como la desviación de un proceso para deliberadamente excluir a una persona del mismo, son actuaciones que deben ser probadas con prueba clara y convincente. Los recurrentes no cumplieron con estas exigencias de prueba.
Por otro lado, el testimonio en la vista administrativa de los funcionarios del Departamento de Justicia, sosteniendo que dicha agencia cumplió adecuada y razonablemente con la legislación y reglamentación aplicable a los ascensos sin oposición, no fue contradicho por los recurrentes.
Las apreciaciones que de la prueba hizo la JASAP, para denegar la apelación y sostener las actuaciones del Departamento de Justicia, están ampliamente apoyadas por evidencia sustancial examinado el expediente sometido a nuestra consideración en su totalidad. La transcripción de la vista administrativa, en nuestra opinión, confirma las conclusiones en que se fundamentó JASAP para su decisión.
Así las cosas, debemos deferencia al dictamen de JASAP, por tratarse de uno razonable y adecuadamente fundamentado en los hechos y en el derecho aplicable. Véase Fernández Quiñones, Demetrio, ob. cit., pág. 543.
IV
Disposición del Recurso
Por los fundamentos antes expuestos, confirmamos la resolución dictada el 15 de abril de 2004 por la Junta de Apelaciones del Sistema de Administración de Personal, pronunciándose no ha lugar a la apelación presentada por los recurrentes ante dicho foro administrativo.
*230 Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones